

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| Paul Adcock, | ) | Docket No. 2017-04-0046 |
|     Employee, | ) | |
| v. | ) | |
| Robert L. Chaffin | ) | State File No. 29534-2015 |
|     Employer, | ) | |
| And | ) | |
| Auto Owners Ins. Co., | ) | Judge Robert Durham |
|     Insurance Carrier. | ) | |

## COMPENSATION HEARING ORDER

This case came before the Court on August 1, 2018, for a Compensation Hearing. The only issues were whether Mr. Adcock was entitled to additional permanent disability benefits for his previously settled claim, and if so, in which amount. For the reasons below, the Court holds Mr. Adcock is entitled to increased permanent disability benefits under Tennessee Code Annotated section 50-6-207(3)(B) but not extraordinary relief.

### History of Claim

On February 4, 2015, Mr. Adcock suffered a work-related cervical spine injury while working for Chaffin. Dr. Leonardo Rodriguez-Cruz eventually performed a cervical fusion. After Mr. Adcock reached maximum medical improvement (MMI), Dr. Rodriguez-Cruz assigned a 12% whole-body impairment and endorsed the following physical permanent restrictions recommended through a functional capacity evaluation: occasional carrying up to 25 pounds; lifting up to 25 pounds from floor to shoulder and 15 pounds from shoulder to overhead; 15 pounds out from body; unilateral lift, maneuver and carry, RUE—15 pounds, LUE—20 pounds; push/pull and force—RUE alone—65 pounds.

The parties settled Mr. Adcock's claim on March 16, 2017, for 12% permanent disability at a compensation rate of $260.01. Mr. Adcock's initial compensation period expired on October 26, 2017. Between the date of injury and October 26, Chaffin went

1

out of business. Consequently, Mr. Adcock never returned to work for Chaffin nor attempted to work elsewhere.

After his initial compensation period expired, Mr. Adcock filed a petition for additional permanent disability under either Tennessee Code Annotated section 50-6-207(3)(B) (increased benefits) and/or Tennessee Code Annotated section 50-6-242(a)(2) (extraordinary relief). He attached a certification form signed by Dr. Rodriguez-Cruz, who certified Mr. Adcock could not return to his pre-injury occupation due to the permanent restrictions caused by his work-related injury. Before the compensation hearing, the parties submitted a joint statement agreeing that the only issue concerned increased benefits. It stated that if 50-6-207(3)(B) applies, the "resulting award" would be based on Mr. Adcock's age and his failure to return to pre-injury wages.

Chaffin introduced Dr. Rodriguez-Cruz's deposition at the hearing. The doctor reiterated that the permanent work restrictions were appropriate for Mr. Adcock's continuing symptoms due to his work injury. However, he further stated that the primary limitation from the injury was continued, palpable, right shoulder tenderness and loss of strength in the right triceps muscle. He also stated Mr. Adcock suffered minimal loss of neck motion and did not complain of numbness. Mr. Adcock's grip strength was unimpaired. Dr. Rodriguez-Cruz did not testify about any significant risk of re-injury to the cervical spine or the need for additional treatment.

As to Mr. Adcock's ability to return to work, Dr. Rodriguez-Cruz stated he signed the certification about Mr. Adcock's employment as a tractor-trailer driver. He understood the job frequently required more strenuous activity than simply driving, such as hooking and unhooking trailers, doing inspections and making repairs. However, he believed Mr. Adcock could continue driving, including driving trucks with manual transmissions, so long as the gearshift was not unduly difficult to operate. He further testified he did not believe Mr. Adcock was totally disabled but was "just less than" an able-bodied person. He did not intend for his certification to infer otherwise.

Mr. Adcock testified that he continues to have problems with pain and weakness in his neck and right arm. He believes these symptoms would interfere with his ability to drive a tractor-trailer, specifically: hooking and unhooking trailers; doing inspections, which includes bending, reaching, and lifting the hood; and moving his spare tire.

Mr. Adcock testified that he is not comfortable driving for any significant time. He performs some household chores, such as taking out the trash, grocery shopping, dusting, and gathering the laundry. He is currently taking 30 milligrams of Oxycodone four times per day for neck and right arm pain. He still has his commercial drivers' license, but the Department of Transportation notified him that he must undergo a medical examination as to his fitness to drive a truck or he will lose it. He testified that the injury caused him to "put everything on hold," given that his expectation of working

2

for another ten or twelve years will not be realized.

Beyond working as a truck driver, Mr. Adcock's employment history primarily consisted of warehouse work, factory work as a crane operator, and housekeeping for a small hospital. He does not believe that he could perform any of his previous jobs given his limitations. He has a high school education and a certification from truck driving school. Mr. Adcock admitted that he has not looked for work since his injury because he does not believe he could return to any of his former employments. Instead, he focused his efforts on obtaining social security disability benefits.

In addition to Mr. Adcock, Michelle Weiss, a vocational rehabilitation counselor retained by Chaffin, testified. Ms. Weiss reviewed Mr. Adcock's medical records and interviewed him regarding his vocational history. She also tested his ability to read and do math. She determined that Mr. Adcock's reading comprehension was average to above average for someone at his age and education level. His math skills fell somewhat below average, although he could multiply three-digit numbers, divide, and add or subtract multiple numbers.

Ms. Weiss conceded that, given his physical restrictions, Mr. Adcock could not return to work as a "heavy" truck driver, which includes tractor-trailers. However, there were many other jobs that fall under the occupation "driver," which she felt Mr. Adcock could do, such as driving vans, pick-up trucks, light-box trucks, etc. In addition, Mr. Adcock could perform other jobs outside of driving that fall within his restrictions, although he might lose some income compared to his pre-injury wages. Applying these factors to Mr. Adcock's regional job market, Ms. Weiss determined that he sustained a 35% vocational impairment from his work injury.

After the hearing, the Court noted the Petition for Benefit Determination described Chaffin's address as "Gainesboro" and indicates it was in Jackson County. But the Court found no evidence in the record to that effect.[1] Thus, the Court decided *sue sponte* to reopen the hearing on August 16, 2018, to allow evidence regarding Mr. Adcock's place of employment at the time of the injury and the possible application of the unemployment multiplier in 50-6-207(3)(B).

### Findings of Fact and Conclusions of Law

Mr. Adcock has the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured

---

[1] The pre-hearing statement indicated that either party "may introduce" any documents previously filed with the Bureau , which would include the First Report of Injury and its description of Chaffin's address, as an exhibit to the hearing. However, neither party did so.

3

employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015). Here, the parties agreed that Mr. Adcock sustained a compensable work injury. The only issues involve whether he is entitled to additional permanent disability benefits and if so how much.

Chaffin argues Mr. Adcock is not entitled to any additional permanent disability benefits because his failure to seek post-injury employment means he did not make a meaningful effort to return to work as required by the Workers Compensation Law. The "meaningful return to work" doctrine holds that whether the employee is entitled to additional benefits is governed by the reasonableness of the employer's post-injury job offer and the reasonableness of the employee's refusal to perform the job. *See Dennis v. Polymer Components*, 2016 TN Wrk. Comp. App. Bd., LEXIS 47, at *10 (Sept. 27, 2016). Chaffin maintains the doctrine is particularly relevant given that, with the 2014 reform, the Court must now consider whether Mr. Adcock returned to *any* employment that paid as much or more than his pre-injury job, and not just whether the pre-injury employer made such a job available to the employee. Tenn. Code Ann. 50-6-207(3)(B).

To support its argument, Chaffin cited *Batey v. Deliver This, Inc.*, 2018 TN Wrk. Comp. App. Bd., LEXIS 2, at *15, 16 (Feb. 6, 2018). In *Batey*, the Workers' Compensation Appeals Board held that the phrase "pre-injury occupation" in section 50-6-242(a)(2) means more than just the employee's ability to perform the job he had before his injury but encompasses a class of jobs that require similar duties. The Appeals Board referred to section 50-6-207(3)(B), which states that an employee who returns to a job with any employer at or above pre-injury wages is not entitled to increased benefits. The Board found that it would be "incongruous" for that statute to consider the employee's return to work for any employer in determining the right to increased benefits, while allowing an employee to show only that he could not return to the pre-injury job to try to prove the claim was "extraordinary" under section 50-6-242. *Id.*

Mr. Adcock responds that the "meaningful return to work" doctrine no longer applies. Section 50-6-207(3)(D) sets out specific examples of when an employee who does not return to work is denied additional benefits: resignation or retirement, misconduct, or a general workforce wage reduction. Mr. Adcock observes that the reasons do not include whether employees were "reasonable" in their efforts to find work within their restrictions in the general labor market, which the legislature could have done had that been their intent. Further, he argues that to allow this type of restriction would encourage employers to terminate injured employees and open the floodgates for contested claims for increased benefits.

In weighing these arguments, the Court notes that the Appeals Board considered the "meaningful return to work" doctrine in determining whether an employee is entitled

to additional disability benefits under post-reform law. *Dennis,* at \*10. However, the Court knows of no authority where the Appeals Board or the Supreme Court considered the reasonableness of the employee's efforts to find work in the general labor market when deciding whether to award increased benefits under section 50-6-207(3)(B). The Court does not consider the Appeals Board's decision in *Batey* to extend the "meaningful return to work" doctrine beyond the pre-injury employer/employee relationship. Doing so would provide the pre-injury employer with little if any incentive under workers' compensation law to return the injured employee to work. The parties stipulated that Chaffin did not offer a post-injury job to Mr. Adcock and that he was not working when the initial compensation period expired. Thus, the Court holds that Mr. Adcock is entitled to increased benefits under section 50-6-207(3)(B) in the stipulated amount of $8,705.13, given that he did not return to work and is over the age of forty.[2]

However, the question remains whether Mr. Adcock is entitled to more permanent disability benefits under Tennessee Code Annotated section 50-6-242. This statute provides that in "extraordinary" cases the employee may receive up to 275 weeks of benefits if the employee satisfies the elements of section 50-6-207(3) and: (1) has at least a 10% impairment rating; (2) the authorized doctor signed a form certifying that the employee could not return to the pre-injury occupation due to restrictions related to the work injury; (3) the employee is not earning at least 70% of the pre-injury wage; *and,* (4) the employee has proven by clear and convincing evidence that limiting recovery to section 50-6-207(3)(B) would be "inequitable in light of the totality of the circumstances."

Here, it is undisputed that Dr. Rodriguez-Cruz gave Mr. Adcock an impairment rating of 12%. He also certified on the proper form that Mr. Adcock could not return to his pre-injury occupation. While Chaffin argues that, pursuant to *Batey,* "pre-injury occupation" should include any form of commercial driving as opposed to only driving tractor-trailers, the Court holds that definition is overbroad and will not extend it beyond whether Mr. Adcock is able to drive tractor-trailers.

Further, as with the Court's holding regarding the applicability of section 50-6-207, the Court declines to consider the reasonableness of Mr. Adcock's failure to seek employment in the general labor market in determining whether he is earning at least 70% of his pre-injury wages. Instead, the Court gives that part of the statute its obvious

---

[2] Although the Court re-opened the evidence as to the issue of whether the factor regarding unemployment applied, neither party presented any evidence as to where Mr. Adcock was employed by the employer at the time of the injury. Although Mr. Adcock referred to the First Report of Injury listing Chaffin's address as Gainesboro, the First Report was never made an exhibit at the original hearing or when the Court re-opened the evidence. Further, Chaffin's counsel indicated that Mr. Adcock was actually injured in Anderson County, although no proof was provided as to this assertion, either. Thus, the Court is not in a position to decide whether it is bound by the parties' stipulations or, if not, whether Mr. Adcock would be entitled to additional benefits under section 50-6-207(3)(B)(iii).

5

meaning and holds Mr. Chaffin met it as well, since the parties agreed that Mr. Adcock has not worked since his accident. Thus, the Court holds Mr. Adcock met the first three elements listed above.

However, the statute indicates that, in addition to those elements, the employee must also prove by "clear and convincing evidence" that it would be "inequitable in light of the totality of the circumstances" to limit the employee's benefits to section 50-6-207. Clear and convincing evidence is a higher standard than the preponderance of the evidence, and the Court is obligated to look at all the circumstances to determine if Mr. Adcock met this standard to establish the inequities of not allowing him additional benefits.

In support of Mr. Adcock's position are these undisputed facts. He sustained a work-related cervical spine injury that caused permanent pain in his neck and right arm as well as demonstrable weakness in his right triceps. These conditions led to permanent restrictions that made it inadvisable for Mr. Adcock to return to work as a tractor-trailer driver. Further, Chaffin's vocational expert assessed Mr. Adcock's vocational impairment at 35%.

But, when considering the "totality of the circumstances" the Court finds that Mr. Adcock's admitted lack of effort in obtaining post-injury employment weighs against him. By failing to even try to find work because he believed he could not perform any of his former employments and instead focusing on receiving social security disability, Mr. Adcock made it difficult to determine his employability. *See, Duignan v. Stowers Machinery, Corp.,* 2018 TN Wrk. Comp. App. Bd, LEXIS 25 AT *11, 12 (May 29, 2018)(efforts to find work in the general labor market to be considered when determining the issue of permanent total disability). Further, Dr. Rodriguez-Cruz testified that any cervical loss of motion was negligible and Mr. Adcock's only physical limitation to employment due to the injury was some loss of strength in his right arm. Mr. Adcock has a high school education and appears capable of continued learning as evidenced by his achievement test scores. His testimony about his post-injury limitations primarily concerned his inability to drive a tractor-trailer. His chief concern regarding his condition was that his plans had to be postponed due to financial uncertainty.

Weighing all these circumstances, the Court holds that Mr. Adcock failed to prove by clear and convincing evidence the inequity of limiting his additional permanent disability benefits to those awarded under section 50-6-207.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Adcock's vocational disability is 19.44% to the body as a whole, which equates to $22,745.67 at the stipulated compensation rate of $290.00. After applying the credit for the original award, Chaffin shall pay $8,705.13 in a lump

sum from which Mr. Adcock's counsel is awarded 20% as attorney's fees.

2.  Chaffin shall continue to provide Mr. Adcock with medical treatment made reasonably necessary by his February 4, 2015 work injury with Dr. Rodriguez-Cruz as his authorized physician.

3.  The $150.00 filing fee is taxed to Chaffin under Rule 0800-02-21-.07 of the Tennessee Compilation Rules and Regulations. Chaffin shall also reimburse Mr. Adcock for reasonable litigation expenses, including but not limited to, court reporter fees and deposition expenses.

4.  Chaffin shall prepare and file a Statistical Data Form within ten business days of the date of entry of this Order.

5.  Absent an appeal, this order shall become final in thirty days.

**ENTERED AUGUST 29, 2018.**

**JUDGE ROBERT V. DURHAM**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1.  Michelle Weiss's Vocational Report
2.  Dr. Rodriguez-Cruz's deposition
3.  Dr. Rodriguez-Cruz's Physician Certification Form
4.  Michelle Weiss's curriculum vitae

Technical Record:

1.  Scheduling Hearing Order
2.  Motion to Compel Discovery
3.  Response to Motion to Compel Discovery
4.  Order Compelling Discovery
5.  Joint Pre-Compensation Hearing Statement
6.  Brief of Paul Adcock
7.  Chaffin Trucking's Brief
8.  Chaffin Trucking's Witness and Exhibit List
9.  Chaffin Trucking's Notice of Filing Trial Exhibits

7

10.    Mr. Adcock's Witness List
11.    Petition for Benefit Determination
12.    Dispute Certification Notice
13.    Order Reopening Evidence
14.    Chaffin Trucking's Brief with attachments
15.    Mr. Adcock's Brief with attachments

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on August 29, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|-----|-------|------------------|
| Andrea Meloff | | | X | ameloff@ddzlaw.com mpastore@ddzlaw.com |
| Michael Haynie | | | X | mhaynie@manierherod.com mgrimmig@manierherod.com |

_Penny Shrum_

**Penny Shrum, Court Clerk**

8



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Filed Date Stamp Here**

### COMPENSATION HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### List of Parties

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____BPR#: _____

Attorney's Address:_____Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

LB-1103    rev. 4/15                          Page 1 of 2                          RDA 11082

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant] _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____       2. Address: _____

3. Telephone Number: _____       4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

    Groceries       $ _____ per month     Telephone    $ _____ per month

    Electricity      $ _____ per month     School Supplies $ _____ per month

    Water         $ _____ per month     Clothing     $ _____ per month

    Gas           $ _____ per month     Child Care   $ _____ per month

    Transportation  $ _____ per month     Child Support  $ _____ per month

    Car           $_____ per month

    Other         $ _____ per month (describe: _____ )

10. Assets:

    Automobile          $ _____     (FMV) _____

    Checking/Savings Acct. $ _____

    House              $ _____     (FMV) _____

    Other              $ _____     Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____